**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-03153-STV

MARKESHA FUTRELL-SMITH,

      Plaintiff,

v.

BRINKER INTERNATIONAL, INC.,

      Defendant.

_____

**ORDER**
_____

Entered By Chief Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [#27] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##10, 11] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court **GRANTS** the Motion with respect to Plaintiff's federal claims and **DECLINES** supplemental jurisdiction over Plaintiff's state claim.

I.    **BACKGROUND**[1]

On April 30, 2022, Plaintiff Markesha Futrell-Smith, a Black female, visited the Chili's restaurant located at 3625 South Monaco Parkway in Denver, Colorado, along with her husband and two children.  [#40 at SOF1, 53]  Prior to that date, Plaintiff and her family frequently dined at the South Monaco Chili's, which Plaintiff described as her "favorite place" and her family's "go-to" restaurant because it was affordable, convenient, and close to home.  [*Id*. at SOF2]  For years before April 30, 2022, Plaintiff dined at multiple Chili's locations, including South Monaco, without any issues regarding service or concerns with the staff.  [*Id*. at SOF5]  In fact, Plaintiff previously worked at two Chili's restaurants.  [*Id*. at SOF3]

On April 30, 2022, Plaintiff and her family were seated by Assistant General Manager Natasha Kilwine.  [*Id*. at SOF6]  Plaintiff and Ms. Kilwine had met before and spoken numerous times.  [*Id*. at SOF8]  On one occasion, Ms. Kilwine gave Plaintiff an application to work at the restaurant.  [*Id*. at SOF9]  On the day in question, Plaintiff had just come from a birthday photoshoot, with her makeup done and her hair dyed orange, which she believes made her appearance look different that day.  [*Id*. at SOF10]  As a result, Ms. Kilwine did not initially recognize Plaintiff when she came into the restaurant.[2] [*Id*. at SOF11]

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's reply in support of the Motion.  [#40]  The Court refers to the sequentially numbered facts set forth in the Statement of Facts as "SOF#."  The Court periodically cites directly to the exhibits cited by the parties in the Statement of Facts to provide additional context.  Disputed facts are identified as such.

[2] Plaintiff disputes that Ms. Kilwine did not recognize Plaintiff and claims Ms. Kilwine admitted in her Daily Logbook that she recognized Plaintiff when Ms. Kilwine approached her at the table.  But Plaintiff testified that Ms. Kilwine "didn't recognize [her] until we got

After seating Plaintiff, Ms. Kilwine went to assign a server to the table. [*Id*. at SOF12] At least one server, Maddie Walton,[3] approached Ms. Kilwine with concerns about Plaintiff and her husband, stating that she recognized the couple and identified them as a couple who had walked out on their bill at least twice previously.[4] [*Id*. at SOF14] Ms. Kilwine stated that both servers[5] were one hundred percent sure that Plaintiff previously walked out on a bill. [*Id*. at SOF70]

At the time, the South Monaco Chili's had been experiencing walkouts.[6] [*Id*. at SOF17] A few days earlier, General Manager Jeffrey Simser had spoken to Ms. Kilwine

---

more into the conversation because . . . I had more . . . makeup on [and] I had orange hair." [#28-1, Futrell-Smith Dep., 84:4-11] The Court thus treats this fact as undisputed.

[3] It is disputed as to whether Ms. Walton was the only server to approach Ms. Kilwine or whether a second server, Maria Chavez, also approached Ms. Kilwine. [*Id*. at SOF19] It is also disputed as to whether Ms. Walton had ever personally observed Plaintiff and her husband walk out on a bill, or whether Ms. Walton was merely conveying information provided to her by Ms. Chavez. [*Id*.] These disputes are immaterial as all that matters is whether Ms. Kilwine believed that Plaintiff and her husband had previously walked out on their bill.

[4] Plaintiff contends much of Defendant's Motion relies on inadmissible hearsay and should not be considered. [#34 at 5] Specifically, Plaintiff argues that statements made by Ms. Walton to Ms. Kilwine—identifying Plaintiff as a prior walkout and prompting her to approach Plaintiff's table—constitute hearsay. [*Id*.] Indeed, to the extent Ms. Walton was conveying to Ms. Kilwine information provided to Ms. Walton by Ms. Chavez, such testimony would be double hearsay. But, while it is true that hearsay is generally inadmissible at the summary judgment stage, the Court finds these statements are not hearsay to the extent that they are offered to show their effect on Ms. Kilwine and explain her actions, as opposed to being offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement").

[5] Again, Defendant contends both servers approached Ms. Kilwine. [*Id*. at SOF19]

[6] Plaintiff disputes this fact and calls it misleading because the walkouts recorded were tables of two and related to the transient population. But Ms. Kilwine testified that the South Monaco Chili's had experienced walkouts in the Spring of 2022 [#28-3, Kilwine Dep., 61:13-1] and Plaintiff does not offer any contradictory evidence. The Court thus treats this general fact as undisputed and discusses in detail below the materiality of the fact that most of the walkouts involved tables of two.

3

about how to address a homeless person who had previously failed to pay.[7]  [*Id*. at SOF18]  Mr. Simser told her that she could confront the person and ask them to leave or inquire about their ability to pay.  [*Id*.]  Based on that conversation, Ms. Kilwine believed that if she recognized guests who had not paid before, she could ask for payment upfront. [*Id*.]

Acting on the servers' statements, Ms. Kilwine approached Plaintiff's table and told Plaintiff that she had been identified as someone who had previously walked out on her bill.[8]  [*Id*. at SOF19-20]  Ms. Kilwine asked Plaintiff which form of payment she would be using.[9]  [*Id*. at SOF48-49]  Plaintiff became upset, got up from the table, and followed Ms. Kilwine into the kitchen area, where guests were not permitted, yelling and cursing at Ms. Kilwine.  [*Id*. at SOF21]  Ms. Kilwine told the assigned server that she would serve the table herself, but she did not have the opportunity to do so because of Plaintiff's reaction.

---

[7] Plaintiff disputes that this is a relevant material fact in that she is not a homeless person. [*Id*. at SOF18]  But Ms. Kilwine's testimony was not specifically directed at homeless persons but, instead, directed at people who had walked out on a bill.  [#28-3, Kilwine Dep., 52:12-24]  Thus, even if Mr. Simser only intended his directive to apply to homeless guests—and Plaintiff does not explain how a server or manager was supposed to distinguish between homeless guests and guests with residences—Ms. Kilwine clearly testified that she understood the directive to apply to any guests that have previously walked out on a bill.  [*Id*. at 52:19-25]  The Court thus treats this fact as undisputed.

[8] Plaintiff disputes this because Ms. Kilwine herself did not identify Plaintiff as a previous walkout.  Ms. Kilwine testified that she approached Plaintiff to inform her that she had been identified as someone who did not pay their bill previously.  [#28-3, Kilwine Dep., 67:11-16]

[9] There is a dispute as to whether Ms. Kilwine asked Plaintiff which form of payment she would be using or specifically requested prepayment.  [#40 at SOF46, 48]  However, in her Response to the Motion, Plaintiff states: Ms. Kilwine "required Ms. Futrell-Smith to provide a valid form of payment upfront before providing service."  [#34 at 1]  The Court finds this distinction ultimately immaterial and, for purposes of its analysis, adopts "valid form of payment upfront" as the operative language.

[*Id.* at SOF23]    Plaintiff was not asked to leave but voluntarily decided to go before ordering or receiving service because she "felt it was best to leave."  [*Id*. at SOF24]

Ms. Kilwine did not mention Plaintiff's race during the interaction.  [*Id*. at SOF25] No one used racial slurs or commented on Plaintiff's race that evening, and Plaintiff testified that no one had ever commented on her race during her many prior visits to Chili's.  [*Id*. at SOF26]  When identifying Plaintiff as a prior walkout, neither Ms. Walton nor Ms. Chavez said anything to Ms. Kilwine that made her think the identification was based on race.  [*Id*. at SOF27]  Plaintiff testified that she did not believe Ms. Kilwine herself was accusing her of walking out but believed the servers had brought the issue to Ms. Kilwine, who then approached Plaintiff as the manager.  [*Id*. at SOF31]  Plaintiff contends the servers misidentified her.[10]  [*Id*. at SOF32]

Chili's did not require white customers to provide proof of payment upfront and did not approach any other customers that night about their ability to pay.  [*Id*. at SOF51-52] In early 2022, Ms. Kilwine had approached one other individual, a Caucasian male, about payment because he had previously walked out on his bill.  [*Id*. at SOF 36]  After the incident with Plaintiff, Ms. Kilwine had no further interactions with guests about their ability to pay and was counseled and disciplined for her conduct.  [*Id*. at SOF37]

Plaintiff filed a complaint with Defendant Brinker International, Inc. regarding the incident.  [*Id*. at SOF38]  Brinker investigated Plaintiff's complaint and concluded that Ms. Kilwine violated Brinker's policies regarding the incident and, as a result, Brinker issued

---

[10] Plaintiff disputes this fact as misleading because she believes Chili's targeted her based on her race.  [#28-1, Futrell-Smith Dep., 73:24-25; 74:1-11, 75:18-76:1]  Plaintiff testified that it was her understanding that she was misidentified because "they thought it was me, but it wasn't me." [*Id*. at 83:6-10; 20-25]  Plaintiff denies the accusation that she formerly walked out on her tab.  [#40 at SOF60]

Ms. Kilwine a written warning. [*Id*. at SOF39, 76] Mr. Simser was also issued a written warning for his implementation of a policy to confront customers suspected of previously walking out on a bill. [*Id*. at SOF77]

Plaintiff also filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") related to the incident. [*Id*. at SOF28; #28-2] After its investigation, the CCRD issued a for cause finding against Chili's for violating Colo. Rev. Stat. § 24-34-402 related to the incident. [##40 at SOF94; 35-10]

Plaintiff initiated this action on November 28, 2023. [#1] Plaintiff brings three claims against Defendant under 42 U.S.C. § 1981, 42 U.S.C. § 2000a, and Colo. Rev. Stat. § 24-34-601. [*Id*.] On November 7, 2024, Defendant filed the instant Motion. [#27] The Motion seeks summary judgment on all of Plaintiff's claims. [*Id*.] Plaintiff has responded to the Motion [#34] and Defendant has replied [#39].

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or defense upon which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell*

6

*v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury.  *See Anderson*, 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party."  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

III.    **ANALYSIS**

Plaintiff brings three claims against Defendant pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000a, and Colo. Rev. Stat. § 24-34-601.  Through the Motion, Defendant seeks summary judgment on all claims.  [#27]  The Court evaluates each claim in turn.

A.    **Claim One: Section 1981**

In Claim One, Plaintiff alleges that Defendant intentionally discriminated against her in violation of 42 U.S.C. § 1981.  [#1 at ¶¶ 50-57]  Section 1981 states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  To establish a prima facie case of discrimination under Section 1981, a plaintiff must establish: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001) (citing *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995)).

Here, it is undisputed that Plaintiff is a Black female, satisfying the first element of a claim under Section 1981.  [#40 at SOF53]  The Court therefore addresses only the second and third elements of Plaintiff's discrimination claim, beginning with an analysis of the protected activity element.

8

## 1.    Interference with a Protected Activity

"Section 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989). "[M]ost litigation involving § 1981 claims has emanated from the right to make and enforce employment contracts." *Hampton*, 247 F.3d at 1102. "However, the statute has been applied to discrimination claims arising in the retail sector and restaurant industry, when a contract has been established." *Id*. (citations omitted). "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights. Such a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quotation omitted). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id*. And intent to make a purchase is sufficient to create a contract interest. *Miales v. McDonald's Restaurants of Colorado, Inc.*, 438 F. Supp. 2d 1297, 1300-01 (D. Colo. 2006) (finding the specific intent to make a purchase sufficient to establish a contract interest); *Avington v. Andales Rest. Corp.*, No. 10-CV-0640-CVE-FHM, 2011 WL 256879, at *3 (N.D. Okla. Jan. 25, 2011) ("Plaintiffs properly alleged a contractual relationship with defendant when they claimed that they entered defendant's restaurant with the intent to purchase food.").

9

"[M]ost authority reviewing § 1981 restaurant-type claims found actionable by courts involved situations where a racial minority was outright denied access to or service at a restaurant. Refusing to contract with or serve someone on the basis of their race amounts to a *per se* violation of § 1981." *Charity v. Denny's, Inc.*, No. CIV A 98-0554, 1999 WL 544687, at *3 (E.D. La. July 26, 1999). "The statute has, however, been increasingly expanded in its scope and application." *Id.* (citing *Perry v. Burger King Corp.*, 924 F. Supp. 548 (S.D.N.Y.1996) (claim actionable where racial minority was not denied service but was denied access to the restroom after eating when other customers were not)). "Dining in a restaurant includes being served in an atmosphere which a reasonable person would expect in the chosen place. Courts have recognized that the contract formed between a restaurant and a customer does include more than just the food ordered." *Id.* at *3; *see also Arguello v. Conoco, Inc.*, 330 F.3d 355, 360 (5th Cir. 2003) ("[D]ining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased."). Ultimately, "[a] claim for impairment of the contractual relationship under § 1981 requires allegations that defendant 'changed an essential term of the customer/restauranteur contract because of race,' and that [plaintiff was] therefore denied the 'enjoyment of all the terms and conditions of the contractual relationship that were enjoyed by white citizens patronizing the restaurant.'" *Avington*, 2011 WL 256879, at *3 (quoting *Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 519 (W.D.N.C. 1998).

Here, Plaintiff and her family visited Chili's for dinner following Plaintiff's birthday photoshoot. [#40 at SOF64] After being seated, Plaintiff claims Ms. Kilwine asked her to provide a valid form of payment upfront for her meal. [#35-1, Futrell-Smith Dep., 58:6-15]

10

The Court finds that a contractual interest existed between Plaintiff and Defendant as protected under Section 1981, and further finds that an essential term of the contractual relationship was changed when Defendant required Plaintiff to provide upfront payment.[11] *See Bobbitt*, 19 F. Supp. 2d at 519 (finding that requiring plaintiffs to prepay changed an essential term of the customer/restaurateur contract because of race, denying plaintiffs the "enjoyment of all . . . terms and conditions of the contractual relationship" that were enjoyed by white citizens patronizing the restaurant (emphasis omitted)); *Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1358-59 (N.D. Ga. 2006) (finding request to prepay sufficient to determine plaintiff was denied service). Plaintiff has therefore satisfied the protected activity element of her racial discrimination claim.

### 2.    Intentional Discrimination

The Court next turns to whether Plaintiff satisfies the intentional discrimination element of Claim One. "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1225 (10th Cir. 2000). When relying upon circumstantial evidence, the evidence must satisfy the *McDonnell Douglas* burden-shifting framework. *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff must first establish a prima facie case under the statute and, if successful, the burden shifts to

---

[11] Defendant disputes that Ms. Kilwine told Plaintiff that she would need upfront payment [#40 at SOF46] but Plaintiff's testimony is sufficient to create a genuine issue of material fact on this point.

the defendant to articulate a legitimate, non-discriminatory justification for the action. *Kendrick*, 220 F.3d at 1226; *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "The defendant's burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotations and citations omitted). Defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." *Id.* (quotation omitted).

After the defendant offers its non-discriminatory reason for the action, the burden shifts back to the plaintiff to produce evidence that the defendant's stated reason was not its true reason for the adverse action, but rather a pretext for discrimination. *See Kendrick*, 220 F.3d at 1226. "To avoid summary judgment after a legitimate, nondiscriminatory reason has been offered, a plaintiff must produce specific facts to show a genuine issue of fact as to pretext." *Le v. Hy-Vee, Inc.*, 385 F. Supp. 2d 1111, 1117 (D. Kan. 2005). "Mere assertions and conjecture are not enough to survive summary judgment. Rather, plaintiffs must also show that those reasons are a pretext 'for discrimination.'" *Id.* Pretext requires more than disagreement or speculation—it demands evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence." *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (quotation omitted); *see also Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005).

### a.    Plaintiff's Prima Facie Case

Here, Plaintiff offers the following as circumstantial evidence showing intentional discrimination: (1) she was treated differently than other non-Black customers who dined in the restaurant that night; (2) Chili's failed to follow its own internal policies related to greeting guests; and (3) Chili's and its witnesses lack credibility.  [#34 at 8]  The Court addresses each argument in turn.

### i.    Disparate Treatment

A plaintiff can show intentional discrimination by proving that she has been treated differently than similarly situated individuals.  *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018); *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 921 (10th Cir. 2004); *Kendrick*, 220 F.3d at 1230.  Plaintiff contends that she and her family were treated differently than other non-Black customers because they were the only Black patrons at the restaurant that night and were the only customers asked to provide payment upfront.  [#34 at 9]  But Plaintiff misinterprets the comparator requirement.  Valid comparators under these circumstances are not just non-Black customers in the restaurant that night who were treated more favorably, but non-Black customers *suspected of having previously walked out on a bill* who were treated more favorably.[12]

---

[12] The hearsay component of this case complicates the analysis.  Once again, the undisputed facts are that at least one server, Ms. Walton, approached Ms. Kilwine and informed Ms. Kilwine that Plaintiff and her husband had twice walked out on their bill.  [#40 at SOF14]  The Court cannot consider this statement for the truth of the matter asserted—that Plaintiff and her husband did walk out on their bill previously.  But the Court may consider the statement for the effect that it had on Ms. Kilwine—*i.e.*, Ms. Kilwine believed, albeit mistakenly, that Plaintiff and her husband had previously walked out on a bill and, based upon this mistaken belief, Ms. Kilwine asked Plaintiff to provide a

*Lucero v. Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012) (explaining, in the employment context, that similarly situated employees are those that are "similar in all material respects" (quotation and emphasis omitted)); *MacKenzie*, 414 F.3d at 1277 (explaining, in the employment context, that similarly situated individuals are those who: "(1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

Plaintiff does not identify any customer who, after being identified by staff as a suspected prior walkout, was permitted to order without a valid form of payment upfront. [#40 at SOF34-35] Nor does Plaintiff present any evidence that other Black families who dined at Chili's were treated the same as she and her family were on April 30, 2022. Indeed, the only other similar comparator was a Caucasian male suspected of previously walking out on a bill and he was likewise questioned about his ability to pay. [*Id.* at SOF36] And Plaintiff testified that she had dined at this Chili's location for years without

---

valid form of payment upfront. Fed. R. Evid. 801(c)(2) (defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement"). Plaintiff nonetheless argues that "[Defendant's] counsel believes that [Defendant] is not responsible for the acts of its employees, including Ms. Chavez" and that Defendant has failed to explain how the servers misidentified Plaintiff as being someone who walked out on her bill. [#34 at 6, 10-11] But the question is not whether Defendant can be held responsible for Ms. Chavez's actions or whether Defendant can explain why Ms. Chavez mistakenly identified Plaintiff. If Ms. Chavez had falsely accused Plaintiff and her husband because of their race, Defendant could be held liable for Ms. Chavez's actions—even if Ms. Kilwine innocently believed Ms. Chavez's accusations, Defendant could still be held liable for Ms. Chavez's decision to accuse Plaintiff and her husband because of their race and any resultant consequences of those false accusations. But Plaintiff, who bears the burden in this case, has not offered any evidence that Ms. Chavez acted with discriminatory intent and the Court cannot speculate on Ms. Chavez's motivation.

incident, and that she and Ms. Kilwine had previously met and had cordial interactions. [*Id.* at SOF2,4-5,8]  Thus, without evidence that similarly situated individuals were treated differently, Plaintiff's circumstantial evidence of intentional discrimination is insufficient. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 (10th Cir. 1997).

This case is thus very different from the case principally relied upon by Plaintiff.  In *Washington v. Duty Free Shoppers, Ltd.*, a store in San Francisco sold both duty-free merchandise and duty-paid merchandise.  710 F. Supp. 1288, 1288 (N.D. Calif. 1988). Despite the fact that the store sold duty-paid merchandise, the store required the Black plaintiffs to produce either a passport or airline ticket to shop in the store.  *Id.* at 1289. The store stated that it required all individuals suspected of prior shoplifting to present such documents, and thus the policy was not discriminatory.  *Id.*  But the evidence did not support that assertion; specifically, seventeen Black plaintiffs were turned away whereas only three individuals of other races were refused service.  *Id.*  Thus, the court denied the defendants' summary judgment motion.  *Id.* at 1289-90.

In contrast here, Plaintiff has not offered any evidence that Defendant only suspected Black individuals of having previously walked out on their bills.  Indeed, Plaintiff has not presented any evidence about anybody else (other than the Caucasian male described above) who was suspected of having walked out on their bills, let alone

Defendant's response to such a suspicion.[13]    Thus, *Washington* is readily distinguishable.[14]

### ii.    Policies

Plaintiff next claims that Chili's employees departed from internal service procedures when identifying her as a prior walkout, thereby creating an inference of intentional discrimination.  [#34 at 12-13]  Specifically, Plaintiff points to Chili's policies stating that seated guests be greeted within sixty seconds and offered drink specials.  [*Id.* (citing #40 at SOF42-43)]  Plaintiff claims that she and her family waited between six and seven minutes before any server approached them and that they were never offered drink specials.  [#40 at SOF44-45]  Instead, Plaintiff alleges that Ms. Kilwine greeted them by accusing the family of walking out on a bill and demanding a valid form of payment upfront.  [*Id.* at SOF46]

Even assuming these events occurred as Plaintiff describes, deviations from general hospitality procedures, without more, do not raise an inference of racial animus. While the Tenth Circuit has not directly addressed violation of internal policies in the restaurant context, it has held in the employment context that "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that

---

[13] Plaintiff briefly mentions an incident where a Black coworker filed a complaint against Ms. Kilwine, in part, based upon race discrimination.  [#34 at 11-12]  After an investigation, Defendant could not confirm the former coworker's allegations [#36-7 at 13] and, in any event, it was not Ms. Kilwine who mistook Plaintiff and her husband for having previously walked out on the bill.  Rather, Ms. Chavez accused Plaintiff and her husband of having previously walked out on the bill and the Court lacks any information about Ms. Chavez's motives for such an accusation.

[14] Plaintiff argues that, as in *Washington*, Defendant cannot explain how its employees misidentified Plaintiff and her family.  [#34 at 10]  But, again, in *Washington*, the plaintiffs presented evidence that Defendant was overwhelmingly identifying Black patrons as shoplifters.  710 F. Supp. at 1289.  Here, Plaintiff has presented no such evidence.

the employer was motivated by illegal discriminatory intent." *Randle*, 69 F.3d at 454 (quotation omitted). And here, Plaintiff has not offered any evidence that other customers suspected of prior walkouts were greeted in the standard manner, or that the departure from standard protocols was race-based. At most, the described delay and omission of standard greetings may support an inference of poor customer service, but not racial discrimination. *See Bobbitt*, 19 F. Supp. 2d at 518 ("While inconvenient, frustrating and all too common, the mere fact of slow service in a fast-food restaurant does not in the eyes of this Court, rise to the level of violating one's civil rights." (quotation omitted)).

Plaintiff further contends that disciplinary measures taken against Ms. Kilwine and Mr. Simser following Defendant's internal investigation prove that policies were violated and thus show discriminatory intent. [## 34 at 12; 40 at SOF76-78] But internal discipline, standing alone, does not establish discriminatory intent. Employers may impose discipline for a variety of reasons unrelated to unlawful discrimination, including poor judgment or failure to de-escalate a situation, which was the case here. The record shows that Ms. Kilwine was disciplined for failing to adhere to Defendant's policies when handling guest incidents and Mr. Simser was disciplined for implementing a policy to confront customers suspected of previously walking out on a bill. [##36-5; 36-10] There is no evidence in the record that these disciplinary actions were imposed because the managers acted with racial animus. Without such evidence, Plaintiff's circumstantial showing of discriminatory intent is insufficient.

### iii.    Witness Credibility

Finally, Plaintiff claims that Chili's and its witnesses lack credibility, which lends itself to an inference of intentional discrimination. [#34 at 13-15] At the summary

17

judgment phase, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted) (emphasis added). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. The question, therefore, is whether the inconsistencies Plaintiff identifies would allow a reasonable jury to infer discriminatory intent.

Here, Plaintiff claims Ms. Kilwine testified that she did not recognize Plaintiff on April 30, 2022, but her notes from the night in question indicate that she had seen Plaintiff and her family before and Plaintiff's testimony indicates Ms. Kilwine recognized her that night. [#34 at 13] Plaintiff also claims that both servers identified Plaintiff as a prior walkout that night, but internal investigation notes state that only one of the servers identified Plaintiff as a walkout. [*Id*. at 14] Lastly, Plaintiff claims that Mr. Simser and the District Operator provided conflicting information about a conversation they had related to a third-party guest complaint following the incident. [*Id*. at 14-15]

But Plaintiff has failed to explain how these alleged inconsistencies would allow a reasonable jury to infer discriminatory intent. Whether Ms. Kilwine immediately recognized Plaintiff or not suggests nothing about discriminatory intent.[15] Plaintiff argues that the "inconsistency is important because it demonstrates the implausibility of Chilli's position" as it "does not make sense [that] this could be an accidental misidentification, as Chili's argues, when Ms. Kilwine recognized [Plaintiff], who she describes as someone

---

[15] As explained earlier, Plaintiff's own testimony supports Ms. Kilwine's testimony that Ms. Kilwine did not immediately recognize Plaintiff. [#28-1, Futrell-Smith Dep., 84:4-11]

she knew well."  [#34 at 13]   And this would be a good argument and perhaps one sufficient to give rise to an inference of discrimination if it were Ms. Kilwine who had claimed to have observed Plaintiff and her husband previously walk out on a bill.  But she made no such claim.  Rather, she was acting on the information of the other server(s).  Similarly, Plaintiff fails to explain how any inconsistency involving the number of servers alleged to have reported observing Plaintiff and her husband walk out on the bill suggests discriminatory animus.  And, finally, Plaintiff fails to explain how any conflicting testimony by Mr. Simser and the District Operator suggests discriminatory animus by any of the employees involved in the incident, especially when neither Mr. Simser nor the District Operator were involved in the incident.  *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1163 (10th Cir. 2002) (confusing and arguably contradictory testimony by employee of the defendant was "immaterial" to establishing discrimination as that employee was not responsible for making the decision at issue).

The only evidence presented suggesting that Ms. Kilwine's decision to approach Plaintiff and her family was race-based comes from Plaintiff's and her husband's speculative and conclusory statements.  [#40 at SOF58 ("Mr. Smith testified that he knew Ms. Kilwine was targeting them based on race because they were the only 'colored people at that time in the restaurant' and that 'you know when a person is rubbing off wrong.'"); *id.* at SOF59 ("Ms. Futrell-Smith testified it was based on race because she has had many experiences being targeted in her life and her and her family were the only black people in the restaurant.")]   And "[a] plaintiff's subjective belief that [she] was discriminated against is insufficient to demonstrate discrimination and does not preclude summary judgment."  *Ouedraogo v. Downtown Denver Bus. Improvement Dist.*, No. 12-CV-01373-

19

JLK, 2014 WL 559962, at *8 (D. Colo. Feb. 13, 2014) (citing *Aramburu*, 112 F.3d at 1408-09).

Accordingly, Plaintiff has failed to produce evidence from which a reasonable jury could infer discriminatory intent. Because Plaintiff has failed to establish a prima facie case, the Court need not engage in the full *McDonnell Douglas* burden shifting analysis. Nevertheless, the Court will assume, arguendo, that Plaintiff could satisfy the prima facie elements and thus proceed to the remaining steps.

### b.    Legitimate, Non-Discriminatory Reason

Under *McDonnell Douglas*, if a plaintiff meets her initial burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *See Randle*, 69 F.3d at 451. "The defendant's burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face." *DePaula*, 859 F.3d at 970 (quotations and citations omitted). Defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." *Id.* (quotation omitted). Defendant has met this burden. It asserts that Ms. Kilwine acted upon reports from two employees, Maddie Walton and Maria Chavez, who believed Plaintiff had previously walked out on a bill. [#27 at 8-9] Given the history of walkouts and the directive from her General Manager to ask for payment upfront from individuals identified as walkouts, the Court finds Ms. Kilwine's stated motivation is legitimate and non-discriminatory on its face.

### c.    Pretext

The burden therefore shifts back to Plaintiff to produce evidence that Defendant's stated reason was not its true reason for the adverse action, but rather a pretext for

discrimination.  *See Kendrick*, 220 F.3d at 1226.  Plaintiff must thus "establish the existence of a genuine issue of material fact as to whether defendants' proffered reasons are unworthy of belief."  *White v. Denny's Inc.*, 918 F. Supp. 1418, 1426 (D. Colo. 1996).  Pretext requires more than disagreement or speculation; it demands evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence."  *Plotke*, 405 F.3d at 1102 (quotation omitted); *see also Jaramillo*, 427 F.3d at 1309.

Plaintiff argues that: 1) the evidence contradicts Chili's theory regarding walkouts; and 2) Chili's investigation was insufficient.[16]  [#34 at 16-18]  With respect to the allegedly contradictory evidence, Plaintiff argues that the records show only two prior walkouts by parties of four in the year leading up to the incident—one eight months earlier and one just two days before—neither of which involved the same servers or identified Plaintiff's family.  [*Id*. at 16-17]  Plaintiff further argues that Chili's has not shown any connection between those past incidents and Plaintiff nor any specific identifying traits.  [*Id*.]  Plaintiff asserts that given the lack of evidence that a family of four regularly walked out on meals, and the implausibility of such a misidentification, the defense lacks credibility.  [*Id*.]

But these assertions are ultimately immaterial as they do not demonstrate that Defendant's stated reason was false, much less that it was a pretext for racial discrimination.  The fact that Chili's had only two families of four walk out in a year does

---

[16] Plaintiff also relies upon the evidence about witness credibility that she argued supported her circumstantial evidence of discriminatory intent.  [#34 at 15]  For the reasons articulated above, the Court does not believe that such evidence supports a finding of pretext for discrimination.  *See supra* Section III.A.2.a.iii.

not undercut the undisputed fact that the restaurant had been experiencing walkouts in the Spring of 2022.  [#40 at SOF17]   And perhaps Chili's should have been more discerning and less suspicious of parties of four as opposed to parties of two or tables consisting of the transient population, but the "relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon them."  *Rivera*, 365 F.3d at 924-25 (citations omitted).  Similarly, the fact that the two prior walkouts involving parties of four involved different servers does not undercut Defendant's proffered explanation—Ms. Kilwine was told that Plaintiff and her husband had previously walked out on the check [#40 at SOF14], not that the entire family had walked out on the check, and nothing would have prohibited Plaintiff and her husband from having previously dined without the children and left without paying.  In such a scenario, the walkout would have involved a party of two, not four.

As for the investigation, Plaintiff argues that although Chili's acknowledged it was investigating a racial profiling complaint, it failed to ask key questions about how Plaintiff and her family were identified as walkouts.  [#34 at 17-18]  Plaintiff further argues that additional evidence—such as a manager's note referencing perceived bias, the loss of interview notes, and a key witness's refusal to appear—further undermines Chili's credibility.  [*Id.*]  And at least in the employment context, the Tenth Circuit has held that a "factfinder can reasonably infer pretext . . . from shortcomings in the employer's investigation."  *Ibrahim v. All. For Sustainable Energy*, 994 F.3d 1193, 1199 (10th Cir. 2021).  But Defendant did treat the investigation as a matter of "high priority" due to the allegations of racial profiling.  [#35-5, Abraira Dep., 17:9-15]  And Defendant disciplined

both Ms. Kilwine and Mr. Simser as a result of the incident.  [##36-5; 36-10]  And while in hindsight Defendant probably should have asked the servers why they believed Plaintiff and her husband had previously walked out on the bills, the Court cannot conclude that this single defect in the investigation, standing alone, would allow a reasonable factfinder to find pretext.

Ultimately, Plaintiff's belief that she was singled out because of her race is not supported by specific, admissible evidence.  Subjective belief and speculation, without more, are insufficient to survive summary judgment.  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995) ("[P]laintiff's mere conjecture that [the defendant's] explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (quotation omitted)).  In sum, "Plaintiff[ ] ha[s] done little more than cite to [her] mistreatment and ask the court to conclude that it must have been related to [her] race. This is not sufficient." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

### d.      Conclusion

Because no reasonable jury could conclude that race rather than reports of prior walkouts motivated Ms. Kilwine's conduct, summary judgment on Plaintiff's Section 1981 claim is warranted. The Court therefore GRANTS the Motion as to Claim One.

### B.      Claim Two: Title II of the Civil Rights Act

In Claim Two, Plaintiff alleges discrimination in public accommodations in violation of 42 U.S.C. §2000a, *et seq.*  [#1 at ¶¶ 58-62]  Title II of the Civil Rights Act prohibits racial discrimination by places of public accommodation.  42 U.S.C. §§ 2000a – 2000a-6.   In order to make a prima facie showing of a Title II public accommodation discrimination claim, a plaintiff must prove that she: (1) is a member of a protected class;

23

(2) attempted to exercise her right to full benefits and enjoyments of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class. *Jackson v. Ford Motor Co.*, No. 23-4034-JAR-TJJ, 2023 WL 7186654, at *2 (D. Kan. Nov. 1, 2023).

Here, it is undisputed that Plaintiff is a Black female, satisfying the first element of a claim under 42 U.S.C. §2000a.  [#40 at SOF53]  As to the second element, Title II expressly provides that a restaurant is a place of public accommodation within the meaning of the statute.  42 U.S.C.A. § 2000a(b)(2).  The Court therefore addresses only the third and fourth elements of Plaintiff's claim.

### 1.    Denial of Benefits and Enjoyments of a Place of Public Accommodation

Plaintiff argues that she was denied full and equal enjoyment of the restaurant's services when Ms. Kilwine prevented her from purchasing food and dining at the restaurant.  [#1 at ¶ 61]  Defendant responds that Plaintiff was not refused service outright and Ms. Kilwine intended to serve Plaintiff's table.  [#27 at 11-12]

Courts have recognized that Section 2000a covers not only outright refusals of service but also materially diminished terms of service based on race.  *See Bobbitt*, 19 F. Supp. 2d at 522 ("Being singled out by the management of a restaurant and, on the basis of race, made to prepay for one's dinner when the normal practice is to pay after the meal, violates that customer's right to 'the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations' of that establishment." (quoting 42 U.S.C. § 2000a)).  Here, as established above, the request for payment upfront altered the terms by which Plaintiff could access the restaurant's services.  *See supra* Section

24

III.A.1.  Thus, for purposes of this element, such an alteration is sufficient to constitute a denial of the "full and equal enjoyment" of a place of public accommodation within the meaning of Section 2000a.

### 2.   Disparate Treatment

Next, the Court turns to whether Plaintiff was treated less favorably than any similarly situated non-Black customer.  To satisfy this element, a plaintiff must point to at least one comparator outside the protected class who was similarly situated and received better treatment.  *Ferguson v. McDonald's*, No. 4:24-CV-00063-CDL-AGH, 2024 WL 4442034, at *3 (M.D. Ga. Oct. 8, 2024), *report and recommendation adopted*, 2024 WL 4844374 (M.D. Ga. Nov. 20, 2024); *Ransom v. Cubesmart Self Storage #4776*, No. 5:23-cv-1502-LCB, 2024 WL 607426, at *5 (N.D. Ala. Jan. 9, 2024); *Jackson*, 2023 WL 7186654, at *2.  Here, as explained above, Plaintiff has not identified any non-Black customer who, after being suspected of having previously walked out, was permitted to order without an upfront form of payment.  *See supra* Section III.A.2.a.i.  She merely asserts that she and her family were the only Black customers in the restaurant at the time, and that no other customers were asked to provide a valid form of payment upfront.  [#34 at 9]  Those customers, however, are not valid comparators because there is no evidence that they were suspected of prior walkouts.  *See supra* Section III.A.2.a.i.  Without a valid comparator similarly situated, Plaintiff cannot raise an inference that the request for a form of payment was racially motivated.  *See id.*  As a result, Plaintiff has failed to establish a prima facie case under Title II, and the Motion is GRANTED as to Claim Two.

**C. Claim Three: Discrimination in Places of Public Accommodation, C.R.S. § 24-34-601**

Claim Three seeks relief against Defendant under Colo. Rev. Stat. § 24-34-601. [#1 at ¶¶ 63-67]  As this is Plaintiff's remaining claim, the Court must decide whether to exercise supplemental jurisdiction over it.  A district court has discretion in deciding whether to exercise supplemental jurisdiction.  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).  The Tenth Circuit has explained:

> Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998).

*Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).  The refusal to exercise supplemental jurisdiction is especially apt where the interest of comity—leaving to the states to decide novel questions of state law—is present.  *Birdwell v. Glanz*, 790 F. App'x 962, 964 (10th Cir. 2020).  As a result, the Court declines supplemental jurisdiction over Plaintiff's state claim.  That claim is thus DISMISSED WITHOUT PREJUDICE.  *Birdwell*, 790 F. App'x at 964 (indicating that state law claims should be dismissed without prejudice if supplemental jurisdiction is declined).

**IV.    Conclusion**

For the reasons stated herein, Defendant's Motion for Summary Judgment [#27] is **GRANTED** with respect to Plaintiff's federal claims.  The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state claim and that claim is **DISMISSED WITHOUT PREJUDICE**.

DATED:  August 13, 2025                    BY THE COURT:

                                           s/Scott T. Varholak
                                           Chief United Stated Magistrate Judge